**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § § | |
| BLUEAVOCADO, CO. | § | BANKRUPTCY NO. 21-51384 CAG |
| | § | CHAPTER 11 PROCEEDING |
| DEBTOR | § § | |

**DECLARATION OF JULIE MAK IN SUPPORT OF FIRST-DAY MOTIONS**

I, Julie Mak, state and declare as follows:

1. I am over 18 years of age and if called upon I would competently testify to the matters set forth herein from my own personal knowledge or from knowledge gathered from others within my review of relevant documents, or my opinion based upon my experience.

2. I am the Chief Executive Officer of BlueAvocado Co., the Debtor in the above styled chapter 11 case.

3. I am a graduate of Tufts University and hold an MBA from Columbia Business School. I am an experienced brand strategist, marketer and product development specialist with over 20+ years of experience and a proven track record in growing brands and creating and launching successful products at major national retailers. I spent 8 years as a Director at OXO, makers of the GOOD GRIPS products, and spearheaded numerous successful category introductions. I started my career as a buyer at Bloomingdale's and also spent several years as a management consultant at Arthur Andersen Business Consulting for global consumer products and retail clients. I began working with BlueAvocado as a consultant and joined on as VP Product Development and Marketing in January 2014. In late 2018, I became president and interim CEO of the Debtor.

4. Based upon my personal knowledge of the Debtor, its business operations, history, industry, and books and records, and based upon information contained in the Debtor's books and records, I am qualified to give this declaration (the "First Day Declaration") on behalf

of the Debtor.

5. Some of the information presented below is based upon my review of documents and data regularly compiled by the Debtor in the ordinary course of its business.

6. I submit this Declaration in support of the Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c) (the "DIP Financing Motion"):

7. Based upon my personal knowledge of the Debtor, its business operations, history, industry, and books and records, and based upon information contained in the Debtor's books and records, I am qualified to give this declaration on behalf of the Debtor.

## BACKGROUND

8. On November 10, 2021 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby initiating the above-captioned bankruptcy case and creating its bankruptcy estate (the "Estate").

9. The Debtor continues to operate and to manage its business as "debtor-in-possession" pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the above-captioned bankruptcy case (the "Chapter 11 Case") pursuant to Section 1104 of the Bankruptcy Code. As of this time a subchapter V trustee has not been appointed.

10. BlueAvocado was incorporated as a Texas corporation in 2008. The Debtor manufactures and sells reusable food bags under the "*(re)zip*"® brand name. It offers kitchen and organization style reusable storage bags and bags for travel and beauty as well as in the pet category. The Debtor's products are manufactured with BPA free, food grade, plastics.

11. Initially the Debtor focused on fashionable, reusable shopping solutions. The Debtor transitioned out of that product line to focus on reusable storage bags. BlueAvocado's mission is to provide thoughtful designs and creative solutions for a greener, simpler life. The Debtor's innovative solutions such as its (re)zip family of products minimize the use of disposable baggies. Plastic bags are the second most commonly found items in beach clean ups and contribute significantly to the growing plastic waste problem. Across the globe more than 100 billion plastic bags are consumed, used for a short time and discarded.

12. BlueAvocado's products are sold primarily through national retailers in the U.S. and Canada. Its products are also sold online through the Debtor's website and on Amazon.

13. The Debtor was initially capitalized through a series of securities offerings. In addition, several insiders loaned money to the Debtor on both a secured and unsecured basis. In 2019 Lee Valkenaar, Jack Long, Roxann Chargois, Jarred Maxwell, and Aqushen, LLC, each individually and as shareholder representatives of BlueAvocado ("Plaintiffs") sued Edward Roels, a former board chair of BlueAvocado and CFO of M. Block & Sons[1]; Bruce Barshop, shareholder and current director of BlueAvocado; Jim Pabst, former CEO of BlueAvocado; me as the current CEO ("Defendants"). Plaintiffs alleged that the Defendants breached their fiduciary duties because of alleged interested transactions, misuse of company monies, and dereliction of duty to shareholders (the "Litigation").

14. The Debtor formed a Special Litigation Committee ("SLC") comprised of independent, disinterested directors to investigate the claims. The SLC hired the Locke, Lord, LLP law firm to assist in the investigation and together they reviewed over 1.5 million documents and

---

[1] M. Block & Sons, Inc. and a related entity, Block Ventures, LLC, (collectively "Block"), were significant shareholders and secured creditors of the Debtor at one point in time. By agreement dated October 15, 2021, Block sold its stock, accounts and notes receivable owed to it by the Debtor to BlueAvo RLOCL, LLC.

interviewed 12 witnesses. The SLC determined in good faith that continuation of the Litigation was not in the best interests of the Debtor. Accordingly, the Debtor intervened in the Litigation for the purpose of filing a motion to dismiss the lawsuit pursuant to Texas Business Organizations Code ("TBOC") § 21.558 (2018) which mandates that a court "shall dismiss a derivative proceeding on a motion by the corporation" if a committee consisting of two or more independent and disinterested directors of the corporation determines, in good faith and after conducting a reasonable inquiry, that continuation of the derivative proceeding is "not in the best interests of the corporation".

15. The Litigation has been dismissed under the anti SLAPP laws as to Defendants Barshop, Pabst and me and the Plaintiffs were ordered to pay $275,000 in attorneys' fees and sanctions to those Defendants. The Litigation continues as to Defendants Roles. In spite of the ruling for the Defendants, Plaintiffs continue to pursue legal actions which drain cash and distracts the Debtor from managing and expanding the operations of the Debtor. As a result, the Debtor has scheduled a hearing date on its motion to dismiss the Litigation.

16. The Litigation has diverted financial and management resources from growing the business to defending the Litigation and paying burgeoning legal expenses. The years of litigation have come at an enormous opportunity cost to the Debtor's business. Now that the Debtor's involvement in the litigation has substantially subsided, the Debtor is positioned to resume its efforts to expand its market and grow its business. The bankruptcy filing is necessary to access capital needed to pursue those efforts.

## THE DIP FINANCING MOTION

17. Contemporaneously herewith, the Debtor has filed the DIP Financing Motion seeking orders granting relief intended to stabilize the Debtor's business operations, minimize the adverse effects of the commencement of the Chapter 11 Case, and facilitate the efficient administration of the Chapter 11 Case. In connection with the preparation for this bankruptcy proceeding, I have reviewed

the DIP Financing Motion. I believe that the entry of orders granting the relief requested in this Motion is critical to the Debtor's ability to continue in operation, and thus maximize the return to its estate and creditors.

A.      DIP Financing Motion

18.     The Debtor seeks authority, on an emergency and interim basis, to enter into a DIP Financing Agreement with BLUEAVO RLOCL, LLC ("BLUEAVO") and for authority to use alleged cash collateral for reasonable and necessary operating expenses, including, but not limited to, employee payroll and contract labor, payment for product manufacturing and shipping, warehouse and distribution costs, marketing expenses and other expenses as provided in the DIP Financing Motion.

19.     The Debtor's proposed emergency use of the DIP loan proceeds and cash collateral is necessary to preserve the value of collateral and the Debtor's estate for the benefit of all creditors, including the secured lender referenced herein, and any other secured creditors purporting to hold an interest in the Debtor's cash collateral during the first fourteen (14) days of the Chapter 11 Case (the "Interim Period"). The Debtor also requests that continued use of the DIP loan proceeds and cash collateral is equally necessary to preserve all of the values and rights of the above constituencies during the life of this Chapter 11 Case. Without access to such cash, the Debtor will not be able to pay for the manufacture of inventory and shipping costs necessary to bring product to market. Debtor will default on its delivery obligations to its customers.

20.     Without DIP loan proceeds and cash collateral, the Debtor will be unable to fund its business operations in a manner that will allow the Debtor to continue to operate, to the detriment of all of the Debtor's creditors, including the lenders referred to herein and the unsecured creditors, and the Debtor's customers. Furthermore, without the ability to fund continuing operations, the Debtor and its estate will suffer immediate and irreparable harm. For example, manufacturers will not

continue to provide necessary product and shippers will not deliver goods to market. Therefore, the Debtor requests the interim relief on an emergency basis.

21. All existing secured creditors have consented to the liens proposed in the DIP Financing Motion and the use of cash collateral. Existing lienholders will be adequately protected by the expenditure of cash collateral by maintaining the going concern value of the Debtor's operations. The continuation and improvement of the Debtor's operations will improve the debtor's cash flow to the benefit of the secured creditors as well as all other creditors.

22. Together with my financial advisors, I have investigated the availability of obtaining a loan for the Debtor on an unsecured basis or as an administrative basis. Loans on that basis are unavailable to the Debtor. The proposed DIP Loan from BLUEAVO is the only source of financing available to the Debtor. In my business judgment, the terms of the BLUEAVO DIP Loan are the best terms available to the Debtor.

23. To the extent that I subsequently discover any facts bearing on this Declaration, this Declaration will be supplemented, and those facts will be disclosed to the Court at the earliest opportunity.

Pursuant to 28 U.S.C. §1746(2) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November ***, 2021.

                                                    Julie Mak, Chief Executive Officer

## CERTIFICATE OF SERVICE

      A true and correct copy of the foregoing document was filed with the Court and served electronically upon those parties registered to receive electronic notice via the Court's CM/ECF system, as set forth below. I further certify that it has been transmitted by first class mail on November 10, 2021 to the parties on the attached service list

                                                  */s/ Raymond W. Battaglia*
                                                  Raymond W. Battaglia